[No. 264.   Decided November 30, 1892.]

WILLIAM P. SAYWARD, *Respondent,* v. BENJAMIN GARDNER, E. CHAMPOUX AND FRED H. PETERSON, *Appellants.*

SPECIFIC PERFORMANCE—SUFFICIENCY OF COMPLAINT—SECONDARY EVIDENCE—LAND OFFICE CERTIFICATE—STATUTE OF FRAUDS—FOREIGN CORPORATIONS—POWER TO TAKE BY DEED—STATUTE OF LIMITATIONS.

A complaint states sufficient facts to entitle the plaintiff to equitable relief, when it alleges that one Gardner purchased certain lands from the United States in the year 1868, receiving the certificate of the register and receiver of the local land office, certifying said purchase and payment therefor; that thereafter said Gardner did, for a valuable consideration, execute to one G. A. Meigs, a contract in writing whereby he agreed to convey to said Meigs, or his assigns, the legal title to said lands upon demand therefor at any time after patent issued to him, and by the same instrument assigned and conveyed to said Meigs all the interest he then had in said lands, at the same time delivering to him the said register's and receiver's certificate; that said instrument of writing had been lost and could not be made a part of the complaint; that said Meigs entered into possession of said lands under said agreement, and upon the issuance of patent in said Gardner's name, said Meigs surrendered said certificate and received the patent; that by mesne conveyances the lands were conveyed to plaintiff and the patent delivered to him in the year 1880, and plaintiff has ever since been and now is in the possession of said lands and of said patent; that thereafter plaintiff demanded of said Gardner a conveyance of said lands, which he refused to execute; and that on or about the 28th day of March, 1889, said Gardner entered into an agreement with the other defendants by which he agreed to convey to them an undivided part of said lands; that at the time of making said agreement all the defendants had full knowledge and notice of the eqitable title and right of plaintiff.

Where the holder of a register's certificate sells the land therein described and endorses the contract of sale upon the back of the certificate, a certified copy of such certificate and contract by the commissioner of the general land office is admissible in evidence to establish the contract, as, by the act of the parties, that officer became the custodian of their agreement, and it cannot be withdrawn from his custody.   (STILES, J., dissents.)

. Although the statute of frauds may require the consideration to be stated in a contract for the sale of land, yet where the price has in fact been paid, the case is taken without the operation of the statute.

Although a deed to a foreign corporation may have been executed before the corporation had complied with the law requiring it to file its articles of incorporation in the office of the secretary of the territory, yet the deed is not void if it was not delivered until after the filing of the said articles.

Where a contract for the conveyance of land specifies no time at which a deed should be made, the cause of action for its enforcement does not accrue until after demand for the deed or the lapse of a reasonable time.

*Appeal from Superior Court, King County.*

*Howe & Corson,* and *Fred H. Peterson,* for appellants.

*W. Lair Hill,* for respondent.

The opinion of the court was delivered by

ANDERS, C. J.—There is a disagreement between the parties to this action as to its nature and object. The respondent contends that it is an action to quiet title, while the appellants insist that it is an action for a specific performance of a contract alleged in the complaint. While it would require a liberal construction of the complaint to support the contention of the respondent, we are satisfied that it states sufficient facts to entitle him to equitable relief. The complaint alleges, in substance, that the defendant Gardner, on December 8, 1868, entered and purchased the land in controversy from the United States, at its land office at Olympia, and at the same time paid to the proper officer, at said land office, the price required by law to be paid for said land, and received the certificate of the register and receiver of the said land office, certifying the said payment and purchase by him; that thereafter (but the exact time is to the plaintiff unknown), the defendant Gardner, entered into a contract with one G. A. Meigs for the sale

to said Meigs of said land, and did, for a valuable consideration, which was then paid to him by the said Meigs, execute to said Meigs a contract in writing, whereby he promised and agreed to convey to said Meigs, or his assigns, the legal title to said lands, upon reasonable demand therefor being made, at any time after the patent therefor should be issued under his said purchase from the United States, and in and by the same instrument of writing did assign and convey to the said Meigs all the interest he then had in the said lands, and the right to the possession thereof, but that the said instrument was not under seal nor acknowledged before any officer authorized to take acknowledgments of deeds; that at the time of executing the said instrument the said Gardner delivered to the said G. A. Meigs the said certificate of the register and receiver of said land office; that the said instrument of writing has been lost, or mislaid, and this plaintiff is unable to furnish or file the same with this complaint; that immediately upon the executing of the said instrument of writing the said Meigs entered into the possession of said lands thereunder, and continued in possession thereof thenceforth until the 13th day of November, 1877; that at the time of the execution of said instrument of writing and the delivery of said certificate by Gardner to said Meigs, the patent of the United States for said lands had not been issued, but it was thereafter, in the month of May, 1869, issued in the name of the defendant Gardner, and purported to grant said lands to him by reason of his said purchase; that said patent was never delivered to said Gardner, but upon its being forwarded to said land office for delivery to the person entitled to receive it, said Meigs surrendered said certificate to the officers of said land office, received said patent and held the same until November 13, 1877; that on the 13th day of November, 1877, the said Meigs, for a valuable consideration, by his deed of that

date, conveyed said lands to the Meigs Lumber and Ship-building Company, a private corporation incorporated and organized under the laws of the State of California, and delivered to it the possession thereof, together with the said patent; that thereafter, on the 9th day of February, 1880, the said Meigs Lumber and Shipbuilding Company, for a valuable consideration, by its deed of that date, conveyed said lands to the plaintiff Sayward, and delivered to him the possession thereof, and at the same time delivered said patent to him, and that plaintiff has ever since been and now is in the possession of said lands and of said patent; that the said instrument of writing not being acknowledged, was never recorded, and was not entitled to be recorded, and that plaintiff, after said 9th day of February, 1880, and prior to the 28th day of March, 1889, demanded of the defendant Gardner a conveyance of said land, which he refused to execute; that on or about March 28, 1889, the defendants Gardner, Peterson and Champoux entered into and executed amongst themselves and with each other a secret agreement, by the terms of which it was and is agreed, amongst other things, that said Gardner shall and will execute to the other defendants a conveyance purporting to convey to them an undivided part of said lands, and that at the time of entering into said agreement the defendants Peterson and Champoux had full knowledge and notice of the equitable title and right of plaintiff as hereinbefore set forth; that under said agreement all the defendants are jointly setting up a false and pretended claim of title to said lands as owners thereof in the name of said Gardner, the said Gardner claiming and assuming himself to be the owner of the legal title thereof in fee, and all of them falsely claiming and pretending that the other defendants own or have an undivided equitable interest therein, under and by virtue of said fraudulent agreement. The complaint concludes with a prayer for a

decree that the plaintiff is in equity the owner of said lands, that the defendants have no equitable interest therein, and that the defendant Gardner execute to plaintiff a good and sufficient conveyance of the legal title of said lands, that neither of the other defendants have any interest therein, and for general relief.

We think the foregoing allegations of fact state a cause of action clearly entitling the plaintiff to the remedy of specific performance, if nothing more, and the demurrer to the complaint was therefore properly overruled.

The defendants, in their answer, after denying all the material allegations of the complaint, except that defendant Gardner purchased the land described in the complaint as therein set forth, pleaded as affirmative defenses to the action — (1) Peaceable and continuous possession of the land in the complaint described from the date of said purchase until about March 28, 1889; (2) the statute of limitations; and (3) that the defendants, Peterson and Champoux, became the owners in good faith and for a valuable consideration of said land by means of a certain conveyance executed to them by Gardner about March 28, 1889, and duly recorded in King county on March 29, 1889, which deed was defectively acknowledged, but which was thereafter duly acknowledged and re-recorded on October 29, 1889, in the auditor's office of said county; and pray that the plaintiff be forever barred from claiming any title or interest whatsoever in or to the said land or any part thereof, and that the alleged deed from Meigs to the Meigs Lumber and Shipbuilding Company and the deed from said company to plaintiff be declared null and void, and for further relief.

The appellants insist — (1) That no contract was proven; and (2) if a contract was proven it was an invalid one. It is not claimed, as a matter of fact, by appellants, that no contract whatever was entered into between Gardner and

Meigs relating to the land in dispute. But their conten-
tion is, that Gardner sold to Meigs the timber standing
upon the land, and not the land itself, and that Meigs paid
Gardner therefor at the rate of $1.25 per acre, or $150 in
all. On the other hand, the respondent claims that Meigs
bought and paid for the land, and not the timber merely.
Both Gardner and Meigs agree that the contract which
they entered into with each other, whatever it was, was
written on the back of the certificate of the receiver of the
land office which was delivered to Gardner when he pur-
chased and paid for the land. Upon this point Gardner
testifies substantially as follows:

"In 1869 I went to Port Madison (Meigs' place of busi-
ness) to sell Meigs this piece of timber land. I met him
between the mill and his office, and I says, Meigs, I have
got some timber land to sell you. He says, yes, what is
it? And I says, it is right back of George Hood's place,
and he says, how much do you want for it? I says I want
$1.50 an acre. Well, he says, is that land any good? I
says, you know what the land is, and what I paid for the
timber. Well, he says, the land is no good, I don't want
the land. I will give you $1.25 for the timber that is on
the land, and he asked me for the certificate that I got
from the land office, and he wrote on the back the very
words I tell you.   .   .   . He bought the timber. He
did not want the land. He paid me $1.25 an acre."

He also testified that he would have sold the land for the
same price, as he deemed it worthless, if Meigs had said he
wanted it. It appears that Gardner left the certificate
with the contract written upon it with Meigs, who, in the
year 1873, surrendered the same to the officers of the land
office, and received the patent for the land, which he re-
tained until he sold the premises to the Meigs Lumber and
Shipbuilding Company in 1877.

After this transaction Meigs and Gardner never saw
each other until a short time prior to March 28, 1889,
when the former went to Vancouver, B. C., where the latter

had been residing for several years, and tendered a deed of
the land to Gardner, and asked him to execute it, which he
refused to do.    Meigs says that, on that occasion, Gardner
admitted that he had sold the land to him, but claimed
that he had paid some taxes on it, and that if he would pay
him the taxes he would make him a deed, but that he did
not know how much he had paid; while Gardner says that
Meigs told him he wanted a deed, and to name his price
for the land, which he refused to do because he did not
know how much it was worth.

After the register's certificate was surrendered to the
land office at Olympia, it appears to have been transmitted
in the due and regular course of business to the general
land office at Washington, and there placed on file.    At
the trial in the superior court the plaintiff offered in evi-
dence a copy of it, together with the endorsements thereon
certified by the commissioner under the seal of his office.
The court admitted the paper in evidence over the objec-
tion of the defendants, and that ruling of the court is as-
signed as error.    It is claimed by appellants—(1) That
duly certified copies from the land offices in Washington and
Oregon are admissible under the provisions of the Code of
Washington, but not copies from the general land office;
and (2) that even if a copy of the receiver's certificate on
file in the general land office is admissible as to matters of
business pertaining to such office, a certified copy of a pri-
vate writing endorsed thereon is not competent to prove
its contents.

While it is true that § 432 of the Code of Washington,
1881, only provides for the admission of certified copies
from the land offices of Oregon and Washington, it does
not necessarily follow that such copies of the same docu-
ments, after they have been transmitted to the general land
office, are inadmissible as evidence.    On this subject Green-
leaf says that the weight of authority seems to have es-

tablished the rule that a copy of a book, or document, given by a public officer whose duty it is to keep the original, ought to be received in evidence, although such officer is not specially appointed by law to furnish copies. 1 Greenl. Ev. (14th ed.), § 485. And this being the rule, the copy of the certificate offered was at least competent evidence to prove that portion of the contract which was a part of the certificate itself, namely, the description of the land. It also showed that the original certificate delivered to Gardner, together with the contract, which, it is admitted, was written thereon, was on file in that office, and consequently not within the jurisdiction of the trial court, nor in the power of the plaintiff. Secondary evidence of the contract was, therefore, admissible. *Burton v. Driggs*, 20 Wall. 125; 1 Greenl. Ev., § 86. And we think that, under the circumstances of this case, the certified copy from the general land office was admissible in evidence. The parties to the contract placed it on a document which was properly lodged in the general land office and which it became the duty of the commissioner to keep there. By the act of the parties that officer became the custodian of their agreement, and neither party can withdraw it from his custody. Parol evidence of its contents was admissible; and why not, then, the certified copy?

The contract, which appears upon the copy of the register's certificate over the signature of Gardner, is in these words: "This is to certify that I have sold to G. A. Meigs all my right, title and interest to the within described land for value received." This contract, as well as the testimony of Meigs, contradicts the evidence of Gardner that he sold and received pay for the timber merely and not the land. But the learned counsel for appellants insist that this contract, if proved, ought not to be enforced in equity for the reason that it is not sufficiently specific in its terms. The main objection is, that the price to be paid is not stated

therein, and that, therefore, the agreement is not certain in that particular. But conceding that in a contract for the sale of land the consideration must be expressed in order to take the case out of the statute of frauds, yet it is a rule of law that, if the memorandum or agreement is insufficient by reason of not stating the price, it becomes valid where, in fact, the price has been paid. 2 Reed, Statute of Frauds, § 593. We think the contract is not open to the objection suggested. Nor do we perceive any evidence tending to show that the compensation was inadequate, or that the contract was unfair or dishonest. Gardner, at the time of the transaction between himself and Meigs, evidently considered the land without the timber of no value, else he would not have been willing, as he says, to have sold the land with the timber upon it for the same compensation he claims to have received for the timber alone. His conduct with reference to the land subsequently to the execution of the contract with Meigs also tends strongly to show that he considered it of no value. After that time he appears to have given it no attention whatever. He was not upon it or about it until soon after Meigs asked him to execute the deed. According to his own testimony he did not even enquire for the patent at the land office until the year 1885, after which he says he did not "bother" any more about it. In the meantime Meigs and his grantees were in possession cutting and taking off the timber, and claiming ownership of the land, and, during late years at least, paying taxes upon it.

It is claimed, however, that for eight or nine years after the execution of the contract Gardner paid the taxes himself through his friend Champoux, but the testimony of the latter hardly supports the contention of counsel. In answer to the interrogatory, "You were a friend of his, were you not?" (referring to Gardner), he replied, "We had never had any dealings; I thought it was only a tax deed.

I paid all the taxes for eight or nine years, but I always thought that land belonged to him." He nowhere says this payment was for or at the request of Gardner, nor did Gardner himself so testify, or that he himself ever paid any taxes assessed against the land. From the whole testimony in the case we cannot avoid the conclusion which was reached by the court below, that, at the time of the contract between them, it was the intention of Meigs to purchase, and of Gardner to sell, the land in controversy. If Gardner did not then believe he sold the land, we can perceive no reason why he should have delivered his only evidence of title, the receiver's certificate, to Meigs.

It is objected by appellants that the deed from Meigs to the Meigs Lumber Company was void, because it was made before that company filed its articles of incorporation in the office of the secretary of the then territory, but we think the objection is not tenable for the reason that it appears that the deed was not delivered until after the said articles of incorporation had been properly filed.

The next contention of appellants is, that the respondent has been guilty of gross *laches*, and that the action is barred by the statute of limitations. It is undoubtedly true that courts of equity do not look with favor upon parties who have long slept upon their rights. But whether a party is guilty of such *laches* as will deprive him of equitable relief depends largely upon the circumstances of the particular case. If one party to a contract has failed to perform his part of the agreement for an unreasonable length of time, equity will not aid him in enforcing performance by the other party. But when there is a contract to convey land, and the purchaser has obtained possession and paid the purchase price, he is vested with an equitable title, and his delay in bringing an action to compel a conveyance of the legal title, however long delayed, will not defeat his remedy, unless, under the circumstances, a specific perform-

ance will be inequitable.  Pomeroy on Contracts, § 404.  In the case before us, the contract, which must be treated as an agreement to convey, and not a conveyance, specifies no time at which a deed should be made.  The cause of action for its enforcement did not therefore accrue until after demand for the deed or the lapse of a reasonable time.  According to the evidence, Meigs made a demand for a deed from Gardner as soon as he learned where he was, and the first time he saw him after the contract was made.  That was certainly within a reasonable time, and this action was begun very soon afterwards, and it follows that it is not barred by the statute of limitations.  Indeed, it may be said that the cause of action did not really accrue until appellant Gardner refused, upon demand, to execute a conveyance of the property.

As to the appellants Champoux and Peterson, it seems quite clear from the evidence that they had full notice of whatever right the respondent had under Gardner.  In fact, Mr. Peterson himself testifies that he wrote to the respondent at Victoria in reference to purchasing this land from him.  They paid nothing for the interest that Gardner undertook to convey to them just prior to the commencement of this action, and are, therefore, in no sense, *bona fide* purchasers for value.

We perceive no error in the record except as to the relief granted.  As the legal title to the land is not in the respondent, as is shown by the pleadings and proofs, the judgment quieting his title cannot be sustained.  The judgment is therefore set aside, and the cause remanded to the court below with directions to enter a decree that appellants execute to the respondent a good and sufficient conveyance of the legal title of the land described in the complaint.

DUNBAR and HOYT, JJ., concur.

SCOTT, J., dissents.

17—5 WASH.

STILES, J. (*dissenting*).—The court, I think rightly, holds this to have been an action for specific performance of a contract to convey land.   That contract was for the plaintiff to prove.   No conveyance had ever been made except from agent to principal, and the patent ran to the defendant.   To make this proof the plaintiff resorted to what I consider to be an extraordinary and most dangerous device.   The contract happened to be written upon the back of the duplicate receiver's receipt, an unimportant paper, which the routine of the general land office required should be surrendered when the patent was delivered by the agent of the government to the patentee, or the person by him designated to receive it.   Now, under the plea that because that useless duplicate receiver's receipt was in fact among the files of the land office, the court allows a copy of the receipt and the writing on the back of it to be received in a court of justice as evidence of this important contract, because the commissioner of the general land office has certified that he finds that writing there.   The acceptance of this paper was based upon the theory that inasmuch as it was out of the possession of both parties to it, secondary evidence as to its contents was receivable.   I am willing to admit that secondary evidence was admissible, but the certificate of the commissioner was not evidence either primary or secondary.   Secondary evidence must be given upon the oath of a witness, either in court or by deposition.   The copies of papers admissible under § 432, Code of 1881, are admissible as original papers, without the necessity of accounting for the loss of the originals.   The paper here in discussion was, as the respondent himself contended, an informal conveyance, which, by reason of its informalities and want of acknowledgment, could be enforced only as a contract to convey.   But with such an instrument the land office had no concern, and the commissioner was not made the custodian of it.   If a complete deed had been

made on a separate paper, and filed in the local land office, to show the right of the grantee to have delivery of the patent to him, would it be contended that a certified copy of that deed could be received? No more this. Admit that the commissioner was made the voluntary custodian of the contract, would he stand in any different relation to the court than any other man who might have been a custodian? But the latter would certainly have been required to make his deposition, exhibit the original and attach a copy, in order that his statement should become secondary evidence. In that event the opposite party would be notified, would have opportunity to examine and perhaps photograph the paper, and could cross-examine the witness. The receiver's receipt part of this paper was of no materiality whatever to any issue in this case, and that was all that the commissioner's certificate could cover; the other side of the sheet was blank paper as to him, except as it might show his justification for delivering the patent to Meigs, which was also immaterial to the case. Without this paper there was no proof of the contract to convey, and I hold that the case failed for that reason.